MEMORANDUM OPINION AND ORDER
 

 ANDERSEN, District Judge.
 

 This case is before the Court on a declaratory judgment action based on a directors and officers liability insurance poli
 
 *934
 
 cy. Joel E Bernstein, M.D., James L. Currie, Neal S. Penneys, M.D., Laura Pearl, Jeremy Silverman, Frank A. Ehm-ann, Henry Kuehn (“Directors”) and Gen-Derm Corporation are before this Court on a motion for summary judgment. Genesis Corporation has brought a cross-motion for summary judgment. At issue are two provisions of a directors and officers insurance policy issued by Genesis. First, Genesis claims that coverage is excluded under the insured versus insured coverage exclusion in the policy. Second, Genesis claims that GenDerm is responsible for paying the applicable retention. We grant the directors’ motion for summary judgment and hold that the insured versus insured exclusion does not apply to the underlying litigation. Furthermore, we hold that the directors are not responsible for advancing a retention under the policy.
 

 BACKGROUND
 

 This litigation centers around an insurance policy issued by Genesis Insurance Company on January 19, 1998. GenDerm Corporation entered into a written contract with Genesis for a directors and officers liability insurance policy. Subject to its terms, conditions and exclusions, the policy insures the directors and GenDerm with respect to claims made against the directors from December 3, 1997, to December 3, 2000. GenDerm and the directors are seeking a declaratory judgment that the policy covers liability and the costs of defense in
 
 Stuart Turner and Richard A. Bernstein v. Joel E. Bernstein, M.D. et al.,
 
 Civil Action No. 16190 (Del. Ch.)
 

 The underlying lawsuit arose out of the December 1997 merger of GenDerm into Medicis Pharmaceutical Corporation. The litigation is pending against the directors in Delaware. The
 
 Turner
 
 suit was brought by plaintiffs Stuart Turner and Richard Bernstein on their own behalf and on behalf of a putative class of “former common stockholders of GenDerm Corporation.” Joel Bernstein, the former director of GenDerm, and Richard Bernstein, the plaintiff in the underlying dispute, are not related.
 

 The former stockholders allege that they were not provided with material information about the prospective merger. They claim inadequate notice to shareholders, damages to shareholders through diminished value of GenDerm shares upon their sale in the merger, and a breach of fiduciary duty by the individual defendants.
 

 The basis for one of Genesis’ claimed exclusions is that Frank P. DiPrima, one of the attorneys representing the plaintiffs in the
 
 Turner
 
 litigation, is a former director and officer of GenDerm. DiPrima held the post of President and Chief Executive Officer of GenDerm, but stepped down due to health reasons on September 5, 1996. After resigning, DiPrima entered into a consulting agreement with GenDerm. This arrangement was effectively ended by GenDerm on April 18, 1997. GenDerm stated that it would pay no further fees under the consulting agreement because DiPrima allegedly damaged the corporation. In September of 1997, DiPrima filed suit against GenDerm and two members of the Board of Directors alleging that they had wrongfully terminated his consulting agreement.
 
 Joel M. Appel et al. v. GenDerm Corporation et al.,
 
 Docket No. L-MRS-2903-97 (N.J.Super.Ct.) The allegations stem from the discharge of DiPrima and three other individuals working at GenDerm. In the
 
 Appel
 
 Complaint, the plaintiffs allege breach of contract, conversion, wrongful discharge, libel, slander, intentional infliction of emotional distress, and deceitful misrepresentations by GenDerm.
 

 DiPrima has a strong connection to the named plaintiffs in the underlying
 
 Turner
 
 lawsuit. Prior to joining GenDerm, DiPri-ma was President and Chief Operating Officer of Western Publishing Company. At Western he worked closely with Richard Bernstein, Chairman of the Board. DiPrima also worked closely with Stuart Turner while Turner was Chief Financial'
 
 *935
 
 Officer at Western. Further, DiPrima solicited Turner and Bernstein to invest in GenDerm while he was the CEO of Gen-Derm.
 

 Richard Bernstein had conversations with DiPrima in which DiPrima criticized the lack of information shared with investors by the GenDerm directors. Richard Bernstein tried to contact Joel Bernstein about the lack of information available to shareholders. Richard Bernstein also complained about that lack of information by letter. Richard Bernstein and DiPrima kept each other appraised of their conflicts with GenDerm. DiPrima received a tip suggesting that Joel Bernstein had misappropriated intellectual property from Gen-Derm, and he drafted a letter to GenDerm which he shared with Richard Bernstein. DiPrima suggested that they should think about “whether there’s anything we could do about it because we’re both hurt by this as shareholders.” DiPrima further indicated that he would like to “discuss timing and any next step.” Finally, DiPrima enclosed a list of business addresses and phone numbers
 
 for
 
 current board members for future use by Richard Bernstein.
 

 On December 1, 1997, DiPrima learned of the proposed merger between GenDerm and Medicis. Later that day he spoke with Richard Bernstein. Richard Bernstein indicated that he was very uncomfortable with Joel Bernstein. Richard Bernstein also “advised Mr. DiPrima that [he] would be seeking legal recourse.” (Richard Bernstein Dep. Trans, p. 85). DiPrima then reminded him that he was an attorney, that he was practicing law again, and suggested that he represent Turner and Bernstein together with Delaware co-counsel in a lawsuit. Turner and Bernstein retained DiPrima and hired Delaware co-counsel.
 

 Subsequent to the filing of the
 
 Turner
 
 Complaint, GenDerm tendered to Genesis a request for indemnification for itself, Medicis, and the directors. The directors provided Genesis with a copy of the Complaint in
 
 Turner.
 
 The directors then began submitting statements of fees and costs charged by them in defense of the
 
 Turner
 
 lawsuit and requesting that Genesis pay the charges. Genesis said that it was willing to provide the directors with a draft undertaking to reimburse the costs of defense subject to a reservation of rights and several conditions. Joel Bernstein submitted to Genesis a written undertaking to reimburse Genesis for advanced costs of defense should Genesis ultimately prove that no coverage existed under the policy. Genesis, however, decided not to advance any of the directors’ costs of defense in the
 
 Turner
 
 litigation because it alleged that the directors failed to inform it about DiPrima’s ties to the
 
 Turner
 
 plaintiffs.
 

 The directors filed a two count Complaint in this Court. In Count I the directors ask for a declaratory judgment under 28 U.S.C. §§ 2201-2202. The directors ask this Court to enter an order declaring that Genesis has an obligation to advance their past, current and future costs of defense incurred in the
 
 Turner
 
 suit, furthermore, the directors ask that we declare that the applicable retention amount is zero dollars. Count II alleges a breach of contract. The directors ask that we find that Genesis breached the policy in bad faith, unreasonably, and vexatiously. The directors further request that we award them attorneys’ fees in connection with this declaratory action.
 

 DISCUSSION
 

 Summary judgment is proper “if the pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Fed. R.Civ.P. 56(c). The party seeking summary judgment carries the initial burden of demonstrating an absence of evidence to support the position of the nonmoving party.
 
 Doe v. R.R. Donnelley & Sons Co.,
 
 42 F.3d 439, 443 (7th Cir.1994). The nonmov-
 
 *936
 
 ing party must then set forth specific facts showing that there is a genuine issue of material fact and that the moving party is not entitled to judgment as a matter of law.
 
 Anderson v. Liberty Lobby,
 
 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). A genuine dispute about a material fact exists only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).
 

 In making this determination, the Court must draw every reasonable inference from the record in the light most favorable to the nonmoving party and should not make credibility determinations or weigh evidence.
 
 Associated Milk Producers, Inc. v. Meadow Gold Dairies, Inc.,
 
 27 F.3d 268, 270 (7th Cir.1994). The nonmoving party must support its contentions with admissible evidence and may not rest upon the mere allegations in the pleadings or conclusory statements in affidavits.
 
 Celotex,
 
 477 U.S. at 324, 106 S.Ct. 2548. The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to establish the existence of an element essential to its case and on which that party will bear the burden of proof at trial. The production of only a scintilla of evidence will not suffice to oppose a motion for summary judgment.
 
 Anderson,
 
 477 U.S. at 252, 106 S.Ct. 2505.
 

 I.
 
 Insured versus Insured Contractual Provision
 

 Genesis claims that the insured versus insured exclusion in the policy precludes coverage in this case. The exclusion states that:
 

 The INSURER shall not be hable to make any payment for LOSS in connection with any CLAIM made against the DIRECTORS or OFFICERS: ... K. By or at the behest of the COMPANY, or any affiliate of the COMPANY or any DIRECTOR or OFFICER, or by any security holder of the COMPANY, whether directly or derivatively, unless such CLAIM is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any DIRECTOR or OFFICER or the COMPANY or any affiliate of the COMPANY; provided, however, this exclusion shall not apply to wrongful termination of employment claims brought by a former employee other than a former employee who is or was a DIRECTOR of the COMPANY.
 

 Genesis argues that this exclusion is implicated in two ways. First, Genesis argues that the former shareholders who brought the
 
 Turner
 
 suit qualify as “security holder[s]” under the insured versus insured exclusion. Second, Genesis argues that Turner and Richard Bernstein brought the lawsuit “at the behest” of DiPrima.
 

 A.
 
 Security Holder
 

 The
 
 Turner
 
 lawsuit is brought by plaintiffs Stuart Turner and Richard Bernstein, the two class representatives, and a class consisting of “all GenDerm common stockholders and their successors in interest and transferees and assigns who owned GenDerm common stock on December 3, 1997, excluding the defendants named herein and their affiliates.” The Complaint specifically indicates that the class members are “former common stockholders of GenDerm Corporation.” If any of the members of the class qualify as a “security holder”, then the insured versus insured exclusion would apply.
 

 Under Illinois law the language of an insurance policy must be given its plain, ordinary, and popular meaning.
 
 Crum & Forster Managers Corp. v. Reso
 
 lution
 
 Trust Corp.,
 
 156 Ill.2d 384, 391, 189 Ill.Dec. 756, 620 N.E.2d 1073 (1993). A term in the policy is not ambiguous merely because the parties can suggest creative possibilities for its meaning.
 
 Lapham-Hickey Steel Corp. v. Protection Mut. Ins. Co.,
 
 166 Ill.2d 520, 529, 211 Ill.Dec. 459, 655 N.E.2d 842 (1995). If the policy is plain and unambiguous, the court will ap
 
 *937
 
 ply the policy in its ordinary sense.
 
 United States Fire Ins. Co. v. Schnackenberg,
 
 88 Ill.2d 1, 4, 57 Ill.Dec. 840, 429 N.E.2d 1203 (1981).
 

 In this case, the plain ordinary interpretation of the term “security holder” in context in the policy is present security holder. Since all of the
 
 Turner
 
 plaintiffs are past security holders, the Turner litigation does not fall within the insured versus insured exclusion. The parties could have excluded previous “security holder[s]” by defining “security holder” to include any past or present security holders. The contract defines directors and officers as “all persons who were, now are, or shall be duly elected Directors or duly elected or appointed Officers of the COMPANY, including their estate, heirs, legal representatives or assigns in the event of their death, incapacity or bankruptcy.” It would have been easy to define security holders in the same manner as directors, but the policy does not exclude coverage for actions brought by past “security holders.”
 

 Genesis advances a theory that the scope of “security holder” refers to the time of the events in the claim. Thus, Genesis contends that the plaintiffs in the underlying litigation would be security holders because they were security holders at the time of the activities alleged in the
 
 Turner
 
 Complaint. The provision of the insurance contract is clear and makes no reference to status at the time of the events which trigger the litigation. Further, the policy is a “claims made” policy. Thus, coverage is determined based on when the claim was filed, not when the underlying actions leading to the claim occurred.
 
 Holmes’ Appleman on Insurance 2d,
 
 § 16.4 (1988). Genesis’ explanation does not follow the logic of the rest of the claims made policy.
 

 A second proposed interpretation also fails. Genesis argues that “security holder” is used in the policy to describe a type of claimant. Since present and past security holders can be claimants against directors and officers, Genesis argues that the underlying litigation falls within the exclusion and cites the use of “security holder” elsewhere in the contract to buttress this interpretation. For example, the definition of “securities claims” in the contract uses “security holder,” and Genesis argues that limiting the language to present security holders would restrict the scope of available coverage. If Genesis is correct, then limiting “security holder” to present security holder would eliminate coverage for securities claims brought by past security holders. However, the coverage provision also contains a catch-all phrase which includes any claim “brought by any person or entity alleging, arising out of, based upon or attributable to, in part or in whole, the purchase or sale, or solicitation of an offer to purchase or sell, any securities of the Company.” Thus, coverage of securities claims is not restricted if we accept the plain ordinary present tense meaning of “security holder.”
 

 Finally, Genesis argues that there is no logical rationale for drawing a distinction between present and past securities holders. Genesis asserts that a court should analyze a term in an insurance contract with “due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract.”
 
 Lapham-Hickey Steel Corp. v. Protection Mutual Ins. Co.,
 
 166 Ill.2d 520, 529, 211 Ill. Dec. 459, 655 N.E.2d 842, 846 (1995). Although Judge Posner cautions not to confuse a rule with its rationale, he noted that the insured versus insured provision exists in order to “exclude coverage both of collusive suits — such as suits in which a corporation sues its officers or directors in an effort to recoup the consequences of business mistakes ... and of suits arising out of those particularly bitter disputes that erupt when members of a corporate, as of a personal, family have a falling out and fall to quarreling.”
 
 Level 3 Communications, Inc., v. Federal Insurance Co.,
 
 168 F.3d 956, 958 (7th Cir.1999) (citations omit
 
 *938
 
 ted). Defining “security holder” in the present tense excludes coverage for collusive suits and for those in which both sides are still part of the corporate family. Neither goal is better served by including a past “security holder” within the exception.
 

 However, we need not confuse the issue by analyzing the purpose of the exclusion. The plain and unambiguous meaning of “security holder” is
 
 present
 
 security holder. Thus, the insured versus insured exclusion does not apply to the plaintiffs in the underlying
 
 Turner
 
 suit.
 

 B.
 
 DiPrima’s Involvement
 

 Genesis argues that this suit is brought at the behest of DiPrima. If Genesis is correct, then coverage for the Turner case would be excluded by the inshred versus insured exclusion. Behest, like security holder, is undefined in the contract. Webster’s defines behest as “an order, command, or earnest request; bidding.”
 
 See Webster’s New World Dictionary
 
 126 (3rd College Edition 1988). Genesis argues that behest can also refer to an insistent desire. The plain ordinary meaning of behest, however, is only triggered if DiPrima affirmatively acted to prompt the underlying litigation.
 

 The parties agree that DiPrima, Turner, and Richard Bernstein are close friends and confidants. Further, the parties agree that Richard Bernstein and Turner invested in GenDerm on the strength of their personal confidence in , DiPrima. Richard Bernstein and DiPrima engaged in conversations about GenDerm’s failure to make information available to shareholders. The uncontested facts, however, reveal that Richard Bernstein first mentioned that he would be seeking legal recourse. When asked whether he filed- the lawsuit at DiPrima’s command, Richard Bernstein replied: “If you are suggesting that somebody commanded me to do something or that I’m acting in somebody else’s behalf, the answer is no. I’m acting on my behalf, and I assume Mr. Turner has acted in his financial best interest as well.” Richard Bernstein first “advised Mr. DiPrima that [he] would be seeking legal recourse,” and only after Richard Bernstein declared his intention to commence litigation did DiPri-ma remind him that he was practicing law and offer his services. Richard Bernstein indicated that he arrived at the decision to commence litigation “independently on my own, because of the lack of communication with the company, its Board of Directors and its CEO.”
 

 Genesis counters by contending that DiPrima is actively involved in the Turner suit as a “second lead counsel” and that his name appears on many of the pleadings in the case. Furthermore, it notes that DiPrima has a contingency fee arrangement with the
 
 Turner
 
 plaintiffs. Because Richard Bernstein and Stuart Turner independently decided to bring suit, however, DiPrima’s level of involvement is irrelevant. The policy only excludes coverage of suits brought “by or at the behest of’ directors or former directors, not suits in which former directors represent plaintiffs.
 

 Although Richard Bernstein must have known that a suit against GenDerm would please DiPrima, DiPrima’s reaction is not enough to satisfy the plain language of the contract. We will not rewrite this provision of the contract and give Genesis a benefit that is not part of the contract. Because the plain meaning of the exclusion does not cover DiPrima’s relationship with the
 
 Turner
 
 plaintiffs, we enter summary judgment in favor of the directors. The insured versus insured exclusion does not apply.
 

 II.
 
 Obligation to Advance Defense Costs not Covered by the Policy and Estoppel
 

 Since we find that this case does not fall within the insured versus insured exclusion, we need not address the arguments advanced by both sides about whether Genesis has an obligation to advance defense costs for claims not covered by the
 
 *939
 
 policy. The
 
 Turner
 
 lawsuit is covered by the policy. Similarly, we decline to consider whether estoppel precludes Genesis from asserting the insured versus insured exclusion.
 

 III.
 
 Retention
 

 The parties disagree about whether the insurance policy requires a $100,000 retention. Retention, as defined by the parties, is like a deductible. Retention is the part of the covered loss for which the insureds are financially responsible. Several provisions of the contract are critical to determining whether Genesis must advance the costs of defense and whether the retention applies in this situation. The first provision is Item 4 of the Declarations Page of the Directors and Officers Liability Insurance Policy which states:
 

 Retentions applicable to Insuring Agreements A. Securities Claims
 

 I. COSTS OF DEFENSE (Subject to Section V.F.)
 

 $ 0 Each DIRECTOR or OFFICER each SECURITIES CLAIM, but in no event exceeding
 

 $ 0 Each SECURITIES CLAIM all DIRECTORS and OFFICERS under Insuring Agreement, Section I.A.
 

 $100,000 Each SECURITIES CLAIM under Company Reimbursement Insuring Agreement, Sections I.B and I.C.
 

 There is no dispute that the
 
 Turner
 
 litigation is a securities claim as defined by the policy. Further, GenDerm has decided that it will not indemnify the directors named in the
 
 Turner
 
 litigation. Section I.A. insures directors and officers against all loss in a claim for a wrongful act “except for such LOSS which the COMPANY
 
 actually pays
 
 as indemnification.” (emphasis added). The plain language of the policy states that no retention applies if GenDerm does not actually indemnify the directors.
 

 Genesis argues that a retention should apply because Delaware law apparently permits GenDerm to indemnify the directors. Thus, according to Genesis, Gen-Derm is obligated to indemnify the directors and pay the applicable retention. This may well be. But we have not been asked to adjudicate whether the $100,000 retention might, therefore, be applicable to GenDerm’s claim under the policy or assessable by Genesis against GenDerm.
 

 IV.
 
 Attorneys’ Fees
 

 In Count II of the Complaint the directors seek an award of their attorneys’ fees in connection with this declaratory action. In general, the “successful party may not recover attorney fees or costs in the absence of a statute or an agreement of the parties to that effect.”
 
 Society of Mount Carmel v. National Ben Franklin Insurance Co.,
 
 268 Ill.App.3d 655, 676, 205 Ill.Dec. 673, 643 N.E.2d 1280 (1994). An Illinois statute allows for the award of attorneys’ fees in situations in which the insurer acted in bad faith, vexatiously, or unreasonably. 215 ILCS 5/155;
 
 National Cycle, Inc. v. Savoy Reinsurance Co. Ltd.,
 
 938 F.2d 61, 63 (7th Cir.1991). With the exception of one Appellate District, Illinois courts have found that insureds must show vexatiousness in order to recover attorneys’ fees.
 
 International Insurance Co. v. City of Chicago Heights,
 
 268 Ill.App.3d 289, 300-01, 205 Ill.Dec. 698, 643 N.E.2d 1305 (1st Dist.1994). The exception,
 
 Trovillion,
 
 granted attorneys’ fees based on the insurer’s duty to defend, even though the Court explicitly found that the insurer had not acted in bad faith.
 
 Trovillion v. United States Fidelity & Guaranty Co.,
 
 130 Ill.App.3d 694, 700-01, 86 Ill.Dec. 39, 474 N.E.2d 953, 958 (5th Dist.1985). The Seventh Circuit has adopted the rationale of the
 
 Trovillion
 
 decision, but has given it a narrow construction.
 
 National Cycle,
 
 938 F.2d at 64. Thus, the Seventh Circuit would recognize a common law rule oblig
 
 *940
 
 ing “an insurer to pay legal expenses if its quiescence forces the insured to bring a declaratory judgment action” based on a breach of a duty to defend.
 
 Id.
 
 The directors would have us extend this rule to cover the instant situation. The insurance company here is responsible for the costs of defense, but is under no duty to defend. Given the narrow construction offered by the Seventh Circuit, we will not extend
 
 National Cycle
 
 to cover the instant situation.
 

 The only way the directors can recover attorneys’ fees is if they show that Genesis acted vexatiously or unreasonably. We hold that Genesis did not act vexatiously or unreasonably. Although the question of what constitutes vexatious and unreasonable conduct is a fact-specific inquiry, the final evaluation of the insurer’s conduct is made by the court.
 
 Horning Wire Corp. v. Home Indem. Co.,
 
 8 F.3d 587, 590 (7th Cir.1993) (affirming denial of penalties for vexatious conduct). In determining whether an insurer is guilty of vexatious conduct, the court must consider the totality of circumstances.
 
 Buais v. Safeway Ins. Co.,
 
 275 Ill.App.3d 587, 211 Ill.Dec. 869, 656 N.E.2d 61, 64 (1st Dist. 1995). Wrongful denial of coverage is not enough by itself to warrant statutory penalties, the denial of coverage must be unreasonable and vexatious.
 
 Matsushita Elec. Corp. of Am. v. Home Indem. Co.,
 
 907 F.Supp. 1193, 1200 (N.D.Ill.1995). An honest dispute as to the legal obligations of the parties does not qualify as vexatious conduct.
 
 Johnson v. Safeco Ins. Co. of Am.,
 
 809 F.Supp. 602, 608 (N.D.Ill.1992), aff'd, 9 F.3d 112, 1993 WL 427713 (7th Cir.1993);
 
 Cummings Foods, Inc. v. Great Cent. Ins. Co.,
 
 108 Ill.App.3d 250, 64 Ill. Dec. 108, 439 N.E.2d 37, 42 (4th Dist.1982) (finding that the insurer behaved fairly in asserting a policy defense, supported by case law, within the language of the agreement). After a review of the agreed material facts, we find that Genesis’ legal position is reasonable. Thus, we deny the directors’ request for attorneys’ fees.
 

 CONCLUSION
 

 For all of the above reasons, summary judgment in this declaratory judgment action is granted in favor of Joel E. Bernstein, M.D., James L. Currie, Neal S. Penneys, M.D., Laura Pearl, Jeremy Sil-verman, Frank A. Ehmann, and Henry Kuehn. Genesis has an obligation to advance and reimburse the director’s past, current and future costs of defense incurred in the
 
 Turner
 
 lawsuit up to the limit of liability set forth in the policy. The directors are not responsible for advancing a retention. The directors’ request for attorneys’ fees is denied.
 

 It is so ordered.