**POWERSPORTS, INC., a Florida corporation, Plaintiff,**

**v.**

**ROYAL & SUNALLIANCE INSURANCE CO.,**
**Defendant.**

Nos. 03–80238–CIV–RYSKAMP,
03–80238–CIV–VITUNAC.

United States District Court,
S.D. Florida.

Feb. 25, 2004.

---

Bridget Ann Berry, Mark Frederick Bideau, Padmavathi Ghanta Hinrichs, Greenberg Traurig, West Palm Beach, FL, Matthew Henry Triggs, Proskauer Rose, Boca Raton, FL, David J. George, Cauley Geller Bowman & Rudman, Boca Raton, FL, Stephen A. Mendelsohn, Greenberg Traurig et al, Boca Raton, FL, for Powersports, Inc, a Florida corporation, plaintiff.

James Miller Kaplan, Dena Elisabeth Feldman, Wilson Elser Moskowitz Edel-

man & Dicker, Miami, FL, R. Douglas Noah, Jr., Thomas M. Spitaletto, Wilson Elser Moskowitz Edelman & Dicker, Dallas, TX, for Royal Sunalliance Insurance Co, defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

RYSKAMP, District Judge.

THIS CAUSE comes before the Court pursuant to the Parties' Cross–Motions for Summary Judgment and Partial Summary Judgment. Defendant, Royal & Sunalliance Insurance Co. ("Royal"), moved for summary judgment on November 10, 2003 [DE 19] and for partial summary judgment on December 16, 2003 [DE 30]. Plaintiff, PowerSports, Inc. ("PowerSports"), moved for summary judgment on November 21, 2003 [DE 21] and for partial summary judgment on December 24, 2003 [DE 31]. The Court heard oral argument on these motions on February 6, 2004. This matter is ripe for adjudication.

## I. BACKGROUND

This is an action for declaratory relief regarding coverage under a directors and officers ("D & O") insurance policy Royal issued to PowerSports for the policy period of August 29, 2001 through August 29, 2002. PowerSports made demand upon Royal for the defense and indemnity of an action currently pending against it in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (the "underlying litigation"). Royal denied coverage, prompting PowerSports to file this action.

PowerSports was founded in September of 1997 by brothers Linn and Lee Heaton, PowerSports sells motorcycles, small water motorcrafts, all-terrain vehicles and scooters through a distribution network of franchise dealerships located throughout Florida. Linn and Lee Heaton are former directors of PowerSports.

Plaintiffs in the underlying action are the Heaton brothers and The Heaton Companies, Inc. Plaintiffs brought suit against, *inter alia*, PowerSports, members of its Board, and Progressive Investment Company, Inc. ("Progressive"). Central to the underlying action is a Purchase Agreement entered into by The Heaton Companies, Inc. and Progressive, whereby the Heatons agreed to purchase 30,000 shares of PowerSports Preferred A Stock from Progressive for $5,000,000.00. Plaintiffs allege that Progressive failed to close on the Purchase Agreement, that members of the Board of PowerSports tortiously interfered with the closing of the stock purchase, and that members of the Board engaged in various ultra vires activities. Significantly, the Complaint and Second Amended Complaint[1] (collectively, "Complaints") in the underlying action refer to

---

1. The parties have submitted both the Complaint and the Second Amended Complaint from the underlying litigation as exhibits. The Complaint includes claims for damages for breach of contract, tortious interference with contract, tortious interference with prospective economic advantage, rescission of alleged ultra vires acts, and injunctive relief. The Second Amended Complaint adds a claim for indemnification, adds a charge of civil conspiracy, and requests imposition of a con-structive trust on proceeds derived from alleged improper actions on the part of defendants. Royal had only the Complaint before it when it denied coverage. That the Complaint was subsequently amended has no bearing on the Court's decision in this matter, as both the Complaint and the Second Amended Complaint refer to the Heaton brothers and The Heaton Companies, Inc. as "the Heatons."

Plaintiffs as "Heaton" or "Heatons" without distinguishing between the Heaton brothers and The Heaton Companies, Inc.

PowerSports made a request to Royal for defense and indemnification of the underlying litigation. Royal denied coverage on the grounds that, as former directors and officers of PowerSports, Linn and Lee Heaton are Insured Persons under the Policy, which contains an *"Insured v. Insured"* (*"I v. I"*) exclusion precluding coverage for Claims made against "the Company [PowerSports] brought or maintained by or on behalf of ... any Insured Person." Royal argues that the *I v. I* clause bars coverage for the entire action. PowerSports concedes that the Heaton brothers' claims are uncovered, but argues that The Heaton Companies, Inc.'s claims are covered. Royal's motion for partial summary judgment makes the alternative argument that claims asserted against PowerSports are uncovered because they fall within the Policy's contract exclusion.

## II. *LEGAL STANDARD ON SUMMARY JUDGMENT*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,*

477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). The movant may meet this standard by presenting evidence demonstrating the absence of a dispute of material fact or by showing that the nonmoving party has not presented evidence in support of an element of its case on which it bears the burden of proof. *Id.* at 322–23, 106 S.Ct. 2548. The moving party need not supply "affidavits or other similar materials negating the opponent's claim." *Id.* at 323, 106 S.Ct. 2548.

Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)). Although the nonmoving party need not present evidence that would be admissible at trial, it may not rest on his pleadings. *Id.* "[T]he plain language of rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548; *see also Graham v. State Farm Mut. Ins. Co.,* 193 F.3d 1274, 1281–82 (11th Cir.1999.)

## III. *DISCUSSION*

"Under Florida law, an insurance policy should be construed in its entirety and given the construction which reflects the intent of the parties." *Gulf Tampa Drydock v. Great Atlantic Ins. Co.,* 757 F.2d 1172, 1174 (11th Cir.1985) (citing *Landress Auto Wrecking Co. v. United*

*States Fidelity & Guaranty Co.*, 696 F.2d 1290, 1291 (11th Cir.1983) (applying Florida law)). *See also Hrynkiw v. Allstate Floridian Ins. Co.*, 844 So.2d 739, 741 (Fla. 5th DCA 2003) (policy language is to be interpreted according to its "everyday meaning" as it is "understandable to a layperson.").

■■■ "[A]mbiguity exists in an insurance policy only when its terms make the contract susceptible to different reasonable interpretations, one resulting in coverage and one resulting in exclusion." *Gulf Tampa Drydock*, 757 F.2d at 1174–75 (citing *Blue Shield of Florida, Inc. v. Woodlief*, 359 So.2d 883, 884 (Fla. 1st DCA 1978)). If an insurance policy contains ambiguous language, "the court is required to construe it in favor of the insured and against the insurer." *Davis v. Nationwide Life Ins. Co.*, 450 So.2d 549, 550 (Fla. 5th DCA 1984). Absent ambiguity in the policy language, however, rules of construction are unnecessary and courts will apply the plain language of the policy. *National Indemnity Co. v. Corbo*, 248 So.2d 238, 241 (Fla. 3d DCA 1971). *See also Southeastern Fire Ins. Co. v. Lehrman*, 443 So.2d 408, 409 (Fla. 4th DCA 1984) (same); *Riveroll v. Winterthur Int'l Ltd.*, 787 So.2d 891, 892 (Fla. 3d DCA 2001) (same).

■■■ Whereas exclusionary clauses are generally considered to be contrary to the protective purpose of insurance, they are construed narrowly against the insurer. *Hrynkiw*, 844 So.2d at 741. "To properly interpret an exclusion, the exclusion must be read in conjunction with the other provisions of the policy, from the perspective of an ordinary person." *Union Am. Ins. Co. v. Maynard*, 752 So.2d 1266, 1268 (Fla. 4th DCA 2000) (citing *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So.2d 1072, 1074–75 (Fla.1998)).

Royal denied coverage for the underlying lawsuit based on Policy Exclusion A.4, which reads as follows:

> The Insurer shall not be liable for Loss resulting from any Claim made against any Insured person, or with respect to Insuring Clause C, the Company…brought or maintained by or on behalf of the Company or any Insured Person in any capacity.

(Ex. A–1, p. 1, § III.A.4.) The Policy defines "Insured Persons" as

> any one or more persons who were, now are or shall be duly elected directors or duly elected or appointed officers of the Company.

(Ex. A–1, p. 4, § VII.C.1.) It is undisputed that the Heaton brothers are "Insured Persons" as defined by the Policy. Therefore, Royal argues that coverage for the entire action is barred, as the Heaton brothers are plaintiffs in the underlying action. PowerSports stresses that The Heaton Companies, Inc. is also a plaintiff in the underlying action, arguing that the Heaton brothers and The Heaton Companies, Inc. have brought distinct claims and that coverage exists for the latter's claims.

■■■ The only cases addressing the question of whether the presence of an insured plaintiff defeats coverage for the entire action are *Level 3 Communications, Inc. v. Federal Ins. Co.*, 168 F.3d 956 (7th Cir.1999), *Bernstein v. Genesis Ins. Co.*, 90 F.Supp.2d 932 (N.D.Ill.2000) and *Sphinx International, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 226 F.Supp.2d 1326 (M.D.Fla.2002). *Level 3* involved a securities fraud lawsuit against an insured entity in which the only insured plaintiff, out of eight plaintiffs total, was a former director of a subsidiary of the insured entity. 168 F.3d at 957. Importantly, the

insured plaintiff joined the lawsuit six months after it was filed. *Id.* The exclusion clause at issue precluded coverage for any "Claim made against an Insured Person" provided that the Claim was "brought or maintained by or on behalf of any Insured." *Id.* The policy defined "Insured Person" as one "who has been, now is, or shall become a duly elected director or a duly elected or appointed officer of the Insured Organization." *Id.* The language "Insured Organization" also applied to the insured entity's subsidiaries. *Id.* Realizing that strict application of the *I v. I* clause would create the "odd result that a claim fully covered when made could become fully uncovered when another plaintiff was permitted to join it," the Court ruled that the claims of the former director were not covered, but that the claims of the remaining plaintiffs were covered. *Id.* at 959–60. The Court noted that the policy contained an allocation clause allowing for the appropriate proportion of the settlement to be allocated to the uninsured plaintiffs. *Id.* at 960–61.

*Bernstein* did not require application of an I v. I policy in the context of an action brought against an insured entity by both insured and uninsured plaintiffs. Nevertheless, the Court stated in dicta that an I v. I clause would bar coverage in its entirety in such an instance. Defendant insurance company entered into an insurance contract with GenDerm Corporation, the defendant in the underlying action. 90 F.Supp.2d at 933. The "I v. I" clause at issue provided that

> [t]he INSURER shall not be liable to make any payment for LOSS in connection with any CLAIM made against the DIRECTORS or OFFICERS ... By or at the behest of the COMPANY, or any affiliate of the COMPANY or any DI-

RECTOR or OFFICER, or by any security holder of the COMPANY, whether directly or derivatively, unless such CLAIM is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation or, or intervention of, any DIRECTOR or OFFICER or the COMPANY or any affiliate of the COMPANY....

*Id.* at 936. Plaintiffs in the underlying action brought a securities fraud suit for themselves and "on behalf of a putative class of 'former common stockholders of GenDerm Corporation.'" *Id.* at 934. Genesis denied coverage on the grounds that the former shareholders were "security holders" under the I v. I clause. *Id.* at 936. The Court disagreed, holding that none of the plaintiffs were insured persons because the term "security holder" applied only to present, not past, security holders. *Id.* at 936–37. The Court noted, however, that "[i]f *any* of the members of the class qualif[ied] as a 'security holder', then the insured versus insured exclusion would apply." *Id.* at 936 (emphasis added). Thus, if the class of plaintiffs included both insured and uninsured individuals, the entire action would be uncovered.

Finally, *Sphinx,* like the present case, involved claims brought by both insured and uninsured plaintiffs. Plaintiffs in *Sphinx* brought a purported securities class action against Sphinx International, Inc., f/k/a Phoenix International, Ltd., Inc. ("Phoenix"). 226 F.Supp.2d at 1330. George Taylor, a former Phoenix officer and director, filed the complaint. *Id.* Taylor solicited other lead plaintiffs by posting a notice on a national newswire service. *Id.* When Phoenix sought coverage for losses incurred in relation to Taylor's suit, its insurer denied coverage based on the I

v. I exclusions in Phoenix's insurance policies. *Id.* The relevant policy provisions provided that coverage would not attach for any claims brought

> [b]y or at the behest of the COMPANY, or any affiliate of the Company or any DIRECTOR or OFFICER, or by any security holder of the COMPANY, whether directly or derivatively, unless such CLAIM is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of any DIRECTOR or OFFICER of the COMPANY; provided, however, this exclusion shall not apply to wrongful termination employment claims brought by a former employee other than a former employee who is or was a DIRECTOR or OFFICER of the COMPANY.

*Id.* at 1329. The Court held that the I v. I clause barred coverage for the entire action, not just the claims asserted by Taylor. *Id.* at 1336–37. The Court distinguished its case from *Level III* on the grounds that plaintiffs' claims were uncovered from the moment they were filed. *Id.* at 1336–37. In contrast, complete denial of coverage in *Level III* would have transformed a completely covered claim into a completely uncovered claim. *Id.* at 1336–37 (citing *Level III*, 168 F.3d at 960).

The instant case is more similar to *Sphinx* than *Level III*. The only reason *Level III* declined to apply the I v. I clause was the late addition of an insured plaintiff. Unlike *Level III*, but like *Sphinx*, this action was uncovered from the date it was filed. The Heaton brothers, "Insured Persons" under the policy, were plaintiffs in the initial action. Whereas this action was uncovered from its inception, the plain language of the I v. I clause bars coverage for the underlying action in its entirety.

PowerSports' arguments to the contrary are unavailing. PowerSports maintains that the Heaton brothers and The Heaton Companies, Inc. assert distinct claims in the underlying action and that The Heaton Companies, Inc.'s claims are covered. PowerSports stresses that the claims relating to the alleged breach of the Purchase Agreement are solely those of The Heaton Companies, Inc. because The Heaton Companies, Inc., rather than either Heaton brother, signed the Purchase Agreement. The Court will not rule on whether claims predicated on the alleged breach of the Purchase Agreement are solely those of The Heaton Companies, Inc., as this issue is properly left to its sister court in the Fifteenth Circuit.

The Court's review of the Complaints in the underlying action indicates that the term "Heaton," a term of the Heatons' choosing, is used in regard to every single allegation of fact in the underlying pleadings and each count asserted in both Complaints. Significantly, PowerSports also refers to all plaintiffs as "the Heatons" throughout its pleadings in the underlying litigation. In light of these extensive pleadings by both the Heatons and PowerSports, PowerSports cannot now claim that the Heaton brothers are not parties to each claim asserted in the underlying litigation. Whereas the Heaton brothers are parties to all claims in the underlying action, the I v. I clause renders the entire action uncovered.

PowerSports' second argument is that the I v. I clause must be read in conjunction with the Policy's allocation clause, which provides that

> [i]f both Loss covered under this Coverage Part and loss not covered under this Coverage Part are jointly incurred because a Claim includes both covered and

non-covered matters...then the Insureds and the Insurer shall fairly and reasonably allocate such amount between covered Loss and non-covered loss based on the relative legal exposures of the parties with respect to covered and non-covered matters.

(Ex. A–1, p. 3, § V.) According to PowerSports, the presence of an allocation clause indicates that the parties contemplated situations in which losses would involve both covered and uncovered claims. Since the underlying suit contains the Heaton brothers' uncovered claims and The Heaton Companies, Inc.'s covered claims, the allocation clause provides that Royal must provide coverage for The Heaton Companies, Inc.'s claims.

■ This argument rests on the assumption that the Court will extend its hand into pending state court litigation and rule that the named plaintiffs in the action are really not plaintiffs at all. The Court has already explained that the Complaints plainly state that all claims in the underlying action are brought by both the Heaton brothers and The Heaton Companies, Inc. Whereas all claims in the underlying action are brought by insured persons, the I v. I clause bars coverage for the action it its entirety. Allocation clauses only become relevant in the event that a loss involves both covered and uncovered claims. Whereas this action involves uncovered claims only, the allocation question is moot. Although *Level III* relied on an allocation clause as a basis for making an exception to application of an I v. I clause, *Level III* had already concluded that the losses involved both covered and uncovered claims. As previously noted, *Level III* reached that conclusion to avoid transforming a covered claim into an uncovered claim. Such is not the case here, where

the action was uncovered from its inception.

Furthermore, although allocation clauses recognize that covered and non-covered claims may coexist in the same action, the allocation clause is not what makes them so. Indeed, if the Court viewed the allocation clause in Royal's policy as a grant of coverage for The Heaton Companies, Inc.'s claims, it would read the I v. I clause out of the policy. See *Gulf Tampa Drydock*, 757 F.2d at 1174 (insurance contracts must be construed in their entirety).

Finally, PowerSports argues that the I v. I clause is ambiguous and maintains that it has proffered a reasonable alternative interpretation of the exclusionary clause. The plain language of the clause states that claims brought by insured persons are not covered. No construction of the language can support PowerSports' position that claims brought by uninsured plaintiffs are covered despite the fact that insured plaintiffs are also parties in the same action. See *Sphinx*, 226 F.Supp.2d at 1340–41 (noting that the I v. I clause was unambiguous and that "[w]hile Plaintiffs might think it is unfair or unreasonable to exclude coverage based on the suit of a former director and officer...there is nothing unclear or uncertain about the language of the exclusion.").

The plain language of the I v. I clause states that actions brought by insured persons are not covered. The Heaton brothers, insured persons, brought the underlying action. Therefore, the I v. I clause bars coverage for the underlying action in its entirety. Since the I v. I clause completely bars coverage for the underlying action, the Court will not address Royal's alternative argument that the policy's contract exclusion bars coverage for claims asserted against PowerSports.

## IV. *CONCLUSION*

THE COURT, being fully advised and having considered the pertinent portions of the record, hereby

ORDERS AND ADJUDGES that Defendant, Royal & Sunalliance Insurance Co. ("Royal"), motion for summary judgment, filed November 10, 2003 [DE 19] is GRANTED, Final judgment shall issue by separate order.

### *FINAL JUDGMENT*

THE COURT having granted Defendant Royal & Sunalliance Insurance Co.'s Motion for Summary Judgment, filed November 10, 2003 [DE 19], hereby

ORDERS AND ADJUDGES that FINAL JUDGMENT IS HEREBY ENTERED in favor of Defendant Royal & Sunalliance Insurance Co. and against Plaintiff PowerSports, Inc. The Clerk of Court shall CLOSE this case and DENY any pending motions as MOOT.