[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 03-13214

_____

D. C. Docket No. 01-01462-CV-ORL-19-KRS

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 14, 2005
THOMAS K. KAHN
CLERK

SPHINX INTERNATIONAL, INC.,
BAHRAM YUSEFZADEH,
RAJU SHIVDASANI

                                                            Plaintiffs-Appellants,

versus

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,
a New York Corporation,

                                                            Defendant,

GENESIS INDEMNITY INSURANCE COMPANY,
a Connecticut Corporation,

                                                            Defendants-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 14, 2005)**

Before TJOFLAT and HILL, Circuit Judges, and GRANADE[*], Chief District
Judge.

_____

[*] Honorable Callie V. Granade, United States Chief District Judge for the Southern
District of Alabama, sitting by designation.

TJOFLAT, Circuit Judge:

This case is about a directors' and officers' liability policy (D&O policy). More specifically, it's about that D&O policy's "insured vs. insured" exclusion, which acts to bar coverage for claims brought by directors and officers. The district court held on summary judgment that this exclusion bars coverage for claims brought by a former director and officer. We agree and thus affirm.

We divide our opinion in three parts. In Part I, we explain the case's factual and procedural history. In Part II, we apply the law to this history. In Part III, we briefly conclude.

## I.

Sphinx International, Inc. was formerly known as Phoenix International Ltd., Inc. Both Sphinx and its predecessor, which we refer to exclusively as Sphinx, design and implement computer software and systems for financial institutions. When Sphinx incorporated in January 1993, Bahram Yusefzadeh became CEO and Chairman of the Board at Sphinx. Prior to incorporation, Yusefzadeh met George Taylor. Soon after their meeting, Yusefzadeh offered Taylor a job as a director and an officer (along with ten percent of the shares of Sphinx). Taylor accepted. Taylor served in these two positions until his employment was terminated in July 1994. Sphinx states that it terminated Taylor's

2

employment because he did not disclose a covenant not to compete from his former job and he misrepresented his qualifications by falsely claiming that he was an expert in client-server technology for financial institutions.

In July 1996, Sphinx contracted with Genesis Indemnity Insurance Co. for D&O policies.  In general, D&O policies indemnify directors and officers from liability for their business decisions.  While Sphinx had two D&O policies from Genesis, the particular policy at issue here was to run from July 1, 1996 to July 1, 1999, and it was extended to August 13, 2000.  This policy was a claims-made policy, which means that it covered Sphinx for claims made during the policy period, irrespective of when those claims arose.  The policy also contained an "insured vs. insured" exclusion that barred claims

> By or at the behest of . . . any DIRECTOR or OFFICER, or by any security holder of the COMPANY, whether directly or derivatively, unless such CLAIM is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any DIRECTOR or OFFICER or the COMPANY or any affiliate of the COMPANY.

The policy defined "director" and "officer" to mean "all persons who were, now are, shall be duly elected Directors or duly elected or appointed Officers of the COMPANY."

For a few years Sphinx did well.  But it missed its earnings projections in

1998 and 1999. As a result, Taylor filed a securities class action against Sphinx on November 23, 1999. On that same day, Taylor published a notice in a national newswire service soliciting other Sphinx shareholders. Taylor then amended his complaint to add as plaintiffs the shareholders that responded to his solicitation.

In response to Taylor's lawsuit, Sphinx sought D&O coverage from Genesis. Genesis denied that claim, justifying its denial on the "insured vs. insured" exclusion. Specifically, Genesis said that because Taylor was a former director and officer, the exclusion barred coverage.

Sphinx then filed suit in Florida state court against Genesis and National Union Fire Insurance Company of Pittsburgh, PA., (another company with which Sphinx had insurance coverage). The case was removed to the Middle District of Florida on the basis of diversity of citizenship under 28 U.S.C. §§ 1332, 1341. To make a long procedural story short, there were essentially two sets of motions and responses that matter on this appeal. The first set began with Genesis's "Motion To Dismiss or, in the Alternative, For Summary Judgment," which focused in large part on the "insured vs. insured" exception.[1] The text of that motion focused on Rule 12(b)(6) of the Federal Rules of Civil Procedure, making Genesis's

---

[1] Sphinx attached all D&O policies, and their exclusions, to its complaint. So while Genesis had not filed an answer pleading the exclusions as affirmative defenses, the court was sufficiently aware of them.

reference to summary judgment somewhat confusing. Sphinx filed a response, arguing that Genesis's motion to dismiss should be denied on several legal grounds, and that Genesis's motion for summary judgment was inappropriate because discovery would reveal documents that could affect the court's decision. The second set began with Sphinx's motion for partial summary judgment. Genesis responded by filing an opposition to Sphinx's motion, where it "request[ed] that the court deny [Sphinx's] motion for partial summary judgment, and grant summary judgment in favor of Genesis."

The district court addressed all of these motions at the same time. Faced with these motions and responses, and several other issues not germane to this appeal, the district court granted summary judgement in favor of Genesis and denied everything else. The court wrote that "[s]ince the parties have filed affidavits in support of their positions, the Court will treat [Genesis]'s submission as a motion summary judgment rather than a motion to dismiss." Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA., 226 F. Supp. 2d 1326, 1328 n.1 (M.D. Fla. 2002). Sphinx appealed, but because the district court's order did not dispose of the claims against National Union, we dismissed the appeal. Sphinx then settled with National Union, and the district court dismissed the suit against it, in effect making the court's earlier summary judgment decision now final and

appealable.

## II.

We review a district court's rulings on motions for summary judgement de novo, and we "apply the same legal standards that bound the district court." Nat'l Fire Ins. Co. of Hartford v. Fortune Constr. Co., 320 F.3d 1260, 1267 (11th Cir. 2003). But we "may affirm the district court where the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted or rejected by the district court." Bonanni Ship Supply, Inc. v. United States, 959 F.2d 1558, 1561 (11th Cir. 1992).

This case requires us to consider state-law contract claims. "Under the Erie doctrine, a federal court adjudicating state law claims applies the substantive law of the state." Ungaro-Benages v. Dresdner Bank AG, 379 F.2d 1227, 1232 (11th Cir. 2004) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)). In particular, "[t]he construction of insurance contracts is governed by substantive state law." Provau v. State Farm Mut. Auto. Ins. Co., 772 F.2d 817, 819 (11th Cir. 1985). Thus, we evaluate the insurance policy in this case (i.e., the D&O policy) under Florida law.

Sphinx makes several arguments, three of which deserve discussion. Sphinx's first argument focuses on the D&O policy's language: it argues that

6

Taylor was not a "duly elected" officer or director and therefore not an "insured." Its second argument focuses on the rationale behind the D&O policy: it argues that the "insured vs. insured" exclusion acts only to prevent collusive suits and therefore does not apply because Taylor and Sphinx were adversarial. Sphinx's third argument is its fallback position: it argues that even if the language and rationale act to deny coverage, we should deny coverage only to that percentage of the claim attributed to Taylor. All of these arguments fail. To explain why, we address each argument in turn.

**A.**

Sphinx's first argument focuses on the meaning of "duly elected." The "insured vs. insured" exclusion bars claims "brought by or at the behest of . . . any DIRECTOR OR OFFICER." The policy defines directors and officers as "persons who were, or now are, or shall be <u>duly</u> elected Directors or <u>duly</u> elected or appointed Officers." (Emphasis added). Sphinx contends that Taylor was not a "duly" elected officer or director because he did not disclose a covenant not to compete and misrepresented his qualifications.

Florida courts have said again and again that "insurance contracts must be construed in accordance with the plain language of the policy." <u>Swire Pac. Holdings, Inc. v. Zurich Ins. Co.</u>, 845 So. 2d 161, 165 (Fla. 2003); <u>see also</u>

7

Hrynkiw v. Allstate Floridian Ins. Co., 844 So. 2d 739, 741 (Fla. 5th DCA 2003) (interpreting policy language for its "everyday meaning"). However, "'[i]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is considered ambiguous.'" Swire Pac. Holdings, 845 So. 2d at 165 (quoting Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000)). Such ambiguities are "construed in favor of the insured and strictly against the drafter." Swire Pac. Holdings, 845 So. 2d at 165. And in cases such as this one that involve exclusions to insurance contracts, the rule is even clearer in favor of strict construction against the insurer: "exclusionary provisions which are ambiguous or otherwise susceptible to more than one meaning must be construed in favor of the insured." State Farm Mut. Auto. Ins. Co. v. Pridgen, 498 So. 2d 1245, 1248 (Fla. 1986). But courts should not strain to find ambiguity. "Only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule [about ambiguity] apposite." Excelsior Ins. Co. v. Ponoma Park Bar & Package Store, 369 So. 2d 938, 942 (Fla. 1979). In sum, if there is no genuine ambiguity, there is no reason to bypass the policy's plain meaning.

Applying these rules to Sphinx's D&O policy yields one result: the plain language of the policy in general, and the word "duly" in particular,

8

unambiguously includes Taylor as a former director or officer and therefore bars Sphinx's claim for coverage. There are two reasons why this is so: (1) the ordinary dictionary definition of "duly" indicates that Taylor was a director and an officer, and (2) the fact that Sphinx's policy did not expressly define "duly" is not determinative.

First, the district court based its decision in part on the plain meaning of "duly":

> As noted by Defendant, the definition of "duly" found in Webster's dictionary is "in a due manner, time, and degree." The use of the term "duly elected" defines and limits the universe of insured to those [that] have attained officer or director statutes in a due manner—that is through regular and proper channels of corporate governance. Based on that "ordinary" definition, Taylor was a "duly elected or appointed" officer or director under the Genesis policy.

Sphinx Int'l, 226 F. Supp. 2d at 1332. The district court's reasoning is spot on.

In contrast to this ordinary, dictionary definition from Genesis, Sphinx cites several hoary cases for the argument that "duly" requires perfect procedure and substance. E.g., Welborn v. Whitney, 126 P.2d 263, 266 (Okla. 1942). Sphinx reaches back into history in an attempt to find an ambiguous definition of "duly." We, however, will not strain to find ambiguity. Instead, like the district court, we adopt the ordinary, dictionary definition of "duly" that focuses on the proper procedures by which Taylor was elected. Such an approach takes the policy as it

9

is written, rather than trying to confuse an otherwise clear provision. This interpretation has substantial support in Florida case law, which often uses dictionaries to define the plain meanings of words in insurance contracts. See, e.g., Deni Assocs. of Florida, Inc., v. State Farm Fire & Cas. Ins. Co., 711 So. 2d 1135, 1139 (Fla. 1998) (agreeing with a Fifth Circuit case's use of Webster's Third New International Dictionary to define "irritant"); Pridgen, 498 So. 2d at 1248 (using Black's Law Dictionary and Webster's New Collegiate Dictionary). Moreover, it is consistent with Florida case law admonishing courts not to look for ambiguity when there is none. Thomas v. Prudential Prop. & Cas., 673 So. 2d 141, 142 (Fla. 5th DCA 1996) ("While it is true that an ambiguity may exist in an insurance contract when the terms of the contract are subject to different interpretations—one of coverage and one of exclusion—our courts should not put strain and unnatural construction on the terms of the terms of the policy in order to create uncertainty or ambiguity.").

Second, it is not determinative that neither the D&O policy nor Florida case law explicitly defines "duly" in cases involving the application of an "insured vs. insured" exclusion. Sphinx's argument that it is demands too much. Indeed, Florida cases are clear that "[t]he lack of a definition of an operative term in a policy does not necessarily render the term ambiguous and in need of

10

interpretation by the courts." Swire Pac. Holdings, 845 So. 2d at 166 (quoting

State Farm Fire & Cas. Co v. CTC Dev. Corp., 720 So. 2d 1070, 1076 (Fla.

1998)); see also Deni Associates, 711 So. 2d at 1139 ("We also reject the

argument that because the words 'irritant' and 'contaminant' are not defined, the

policy exclusion is ambiguous.").

In sum, Florida law requires us to consider the plain meaning of the terms in

an insurance contract, even if a term is not defined in the policy. And as the

district court correctly held, the plain meaning of "duly" clearly indicates that

Taylor was a "duly" elected officer and director because it is undisputed that the

procedures by which he was elected were conducted in a due manner, time, and

degree.

**B.**

Sphinx's second argument focuses on a perceived conflict between the text

and the rationale for the "insured vs. insured" exclusion. The original rationale

behind the exclusion was to bar coverage for "collusive suits[,] such as suits in

which a corporation sues its officers or directors in an effort to recoup the

consequences of their business mistakes." Level 3 Communications, Inc. v. Fed.

Ins. Co., 168 F.3d 956, 958 (7th Cir. 1999); see also Harris v. Gulf Ins. Co., 297 F.

Supp. 2d 1220, 1227 (N.D. Cal. 2003) (stating that "protection from collusive suits

11

. . . was apparently the primary reason that ["insured vs. insured"] exclusions were adopted"). Sphinx argues that this rationale trumps the text. To support this argument, Sphinx cites several non-Florida cases. See, e.g., Township of Center v. First Mercury Syndicate, Inc., 117 F.3d 115, 119 (3d Cir. 1997) (holding that because "there is no contention that the underlying [wrongful discharge] actions are collusive," the "ex-employees/plaintiffs are not insured within the meaning of the ["insured vs. insured"] exclusion"); Fidelity & Deposit Co. of Maryland v. Zandstra, 756 F. Supp. 429, 432 (N.D. Cal. 1990) ("It is clear beyond doubt . . . that [the insured's] involvement in the underlying actions is not collusive. The 'insured v. insured' exclusion therefore does not excuse [the insurer] from coverage.").

We agree with the district court that the exclusion's rationale does not trump its text. To be sure, there is a genuine split of authority. Some courts look behind an exclusion's text to its rationale. See generally Township of Center, 117 F.3d 115; Zandstra, 756 F. Supp. 429; Conkin Co., Inc. v. Genesis Fire Ins. Co., Civ. No. 4-86-860, 1987 WL 108957 (D. Minn. Jan. 28, 1987). Others, however, focus exclusively on its plain text. See generally Powersports, Inc. v. Royal & Sunalliance Ins. Co., 307 F. Supp. 2d 1355 (S.D. Fla. 2004); Foster v. Kentucky Hous. Corp., 850 F. Supp. 558 (E.D. Ky. 1994); Voluntary Hosps. of Am., v. Nat'l

12

Union Fire Ins. Co. of Pittsburgh, Pa., 859 F. Supp. 260, 263 (N.D. Tex. 1993). But while there is a conflict, it's fought outside Florida. Part II.A demonstrates that in Florida the rule for interpreting insurance contracts is the plain meaning of its terms.

As a corollary to Florida's plain-meaning rule, Florida courts do not look behind unambiguous policies in search of countervailing rationales. The Florida Supreme Court put it this way: "unless we conclude that the policy language is ambiguous, it would be inappropriate for us to consider the arguments pertaining to the drafting history of the . . . exclusion clause." Deni Assocs., 711 So. 2d at 1139 (citing Dimmitt Chevrolet, Inc. v. Southeastern Fidelity Ins. Corp., 636 So. 2d 700, 705 (Fla. 1993)); see also Auto-Owners Ins. Co., 756 So. 2d at 33 ("[W]e find that the policy language is clear and unambiguous and thus must be construed in accordance with the 'plain language of the polic[y] as bargained for by the parties.'" (quoting Prudential Prop. & Cas Ins. Co. v. Swindal, 622 So. 2d 467, 470 (Fla. 1993)). In the words of a federal district court applying Florida law: "Absent ambiguity in the policy language, however, rules of construction are unnecessary and courts will apply the plain language of the policy." PowerSports, 307 F. Supp. 3d at 1359.

Florida's plain-meaning rule—and the rule's corollary against searching for

countervailing rationales in an otherwise unambiguous insurance policy—means that Sphinx's argument fails. Sphinx essentially asks us to overlook both the rule and its corollary, focusing instead on the policy behind the "insured vs. insured" exclusion. As we are bound by Florida law, we cannot comply. Thus, just like the district court in this case, we will not search for a countervailing rationale in Sphinx's otherwise unambiguous insurance policy. Instead, because the D&O policy's language is unambiguous, we apply it as written.

## C.

Sphinx's third argument is its fallback position. Sphinx argues that even if we apply the "insured vs. insured" exclusion to bars coverage, we should only exclude that percentage of the claim attributed to Taylor.

Sphinx is not alone in making this argument: for support, it cites Level 3 Communications, 168 F.3d 956 (7th Cir. 2001). In that case, the Seventh Circuit dealt with an "insured vs. insured" exclusion that "exclude[d] liability on account of any 'Claim made against an Insured Person' if the Claim is 'brought or maintained by or on behalf of any Insured.'" Id. at 957. The policy defined "'Insured Person' . . . to include a 'person who has been, now is, or shall become a duly elected director or a duly elected or appointed officer of the Insured Organization.'" Id. In that case, six shareholders brought suit; six months later, a

14

former director joined the suit. The insurance company then invoked the "insured vs. insured" exclusion. The Seventh Circuit agreed that the former director's claim was not covered, but the court did not deny coverage for the other claims:

> [The former director] had 16 percent of the shares and so presumably received 16 percent of the settlement, with the rest going to plaintiffs who were not "Insureds" within the meaning of the insurance contract. The coverage of their claims was not barred by the "Insured versus Insured" exemption.

Id. at 960. Sphinx argues that we should similarly segregate Taylor's claim from the claims of the remaining plaintiffs.

Unfortunately for Sphinx, Level 3 Communications is too different to be useful. One important difference is that the former-director plaintiff in Level 3 Comminations was merely a passive shareholder who joined a larger suit. Specifically, the plaintiff was one of eight other plaintiffs and only joined the suit six months after it was filed. Here, in contrast, Taylor brought the lawsuit and recruited every other plaintiff. See PowerSports, 307 F. Supp. 2d at 1362 (excluding coverage because the "insured persons[] brought the underlying action") (emphasis added)). Therefore, this case does not implicate Level 3 Communications's concern that a former director's presence as "an unnamed class member" with a small stake would cause the insured to lose coverage. Level 3 Communications, 307 F.3d at 958.

Moreover, the language of the policy in our case differs from Level 3 Communications. In that case, the policy excluded coverage for claims "brought or maintained by or on behalf of any Insured." Level 3 Communications, 168 F.3d at 957. Here, in contrast, the D&O policy is much broader, barring coverage for claims "By or at the behest of . . . any DIRECTOR or OFFICER . . . unless such CLAIM is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any DIRECTOR or OFFICER or the COMPANY or any affiliate of the COMPANY." While the language in Level 3 Communications gave the court some wiggle room, the language in our case is plain and clear, compelling our conclusion that Genesis need not cover Sphinx for Taylor's lawsuit.

Let us be clear: we are not saying that Level 3 Communications was wrongly decided. We are merely saying that its facts are too dissimilar to our own to be decisive.

Because Level 3 Communications is not on point, we are left with the perspicuous mandate of several Florida Supreme Court decisions: focus on the plain meaning of the policy unless that policy is ambiguous. And as detailed above, the "insured vs. insured" exclusion in this case is unambiguous. Understood from this perspective, Sphinx is really inviting this court to rewrite the

16

D&O policy at issue to require the segregation of claims based on the percentage attributable to each litigant. We reject its invitation because the Florida Supreme Court would reject it. That court has stated that, "As a court, we cannot place limitations upon the plain language of a policy exclusion simply because we think it should have been written [another] way." Deni Assocs., 711 So. 2d at 1139. To illustrate, the court recently rejected an attempt by an insured to change the plain language of its insurance policy. See generally Swire Pac. Holdings, 845 So. 2d 661. In that case, the court said that while the insured's "reasoning . . . is certainly logical," id. at169, "[i]t [was] inappropriate for [the insured] to attempt to add language to the contract which changes its effect in an attempt to secure coverage." Id. at 168.

The Florida Supreme Court would likely be equally suspicious of Sphinx's attempt to secure coverage. Sphinx's D&O policy clearly bars coverage for suits by former directors and officers. Sphinx's request to read the policy differently essentially asks a court to rewrite it, which is something we will not do.

## III.

For the reasons stated above, we conclude that the district court did not err in granting summary judgment in favor of Genesis.

AFFIRMED.

17