Filed 12/31/14  Ecolite Concrete USA v. G.S. Levine Ins. Services CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ECOLITE CONCRETE U.S.A., INC., et al., Plaintiffs and Appellants, v. G.S. LEVINE INSURANCE SERVICES, INC., Defendant, Cross-complainant and Respondent; RISK PLACEMENT SERVICES, INC., Cross-defendant and Appellant. | D064178, D064917, D064918 (Super. Ct. No. 37-2011-00098582-CU-PN-CTL) |

CONSOLIDATED APPEALS from judgments of the Superior Court of San Diego County, Steven R. Denton, Judge.  (Retired judge of the San Diego Sup. Ct.)  Affirmed and affirmed as modified.

Law Offices of Martin N. Buchanan and Martin N. Buchanan for Plaintiffs and Appellants.

Pettit Kohn Ingrassia & Lutz, Douglas A. Pettit, Conor J. Hulburt and Arie L. Spangler for Defendant, Cross-complainant and Respondent.

Seyfarth Shaw and Aaron Belzer; Hawash, Meade Gaston Neese & Cicack and Walter J. Cicack for Cross-defendant and Appellant.

Plaintiffs Brian Smith and Ecolite Concrete U.S.A., Inc. (EcoliteUSA) (Smith and EcoliteUSA are collectively referred to as Ecolite) appeal from a judgment entered in favor of their insurance broker, G.S. Levine Insurance Services, Inc. (GSL), after the trial court concluded that any negligence by GSL in failing to timely tender Ecolite's claim caused no damages because the insured vs. insured exclusion contained in Ecolite's insurance policy excluded coverage for the action filed against Ecolite. We shall affirm.

Wholesale insurance broker, Risk Placement Services, Inc. (RPS), appeals from a costs judgment against it in favor of GSL on RPS's cross-complaint. RPS also argues that in the event we reject Ecolite's appeal, the trial court erred by not rendering judgment in its favor on GSL's cross-complaint and incorrectly interpreted an indemnity clause in an agreement between it and GSL. We agree with RPS's argument as to costs, but reject its other claims.

FACTUAL AND PROCEDURAL BACKGROUND

Smith incorporated EcoliteUSA and Ecolite International, Inc. (EcoliteINT) to commercialize a technology for light-weight concrete wall panels. EcoliteINT is no longer a party to this appeal as it forfeited its corporate status. (Rev. & Tax. Code, § 23301.) In 2006, Ecolite entered into a business relationship with RQ Construction, Inc. (RQ), allowing RQ to use Ecolite's panels in some of its projects. Between 2006 and 2008, RQ and Ecolite entered into a number of agreements, which resulted in RQ

2

acquiring Ecolite stock and becoming its largest outside shareholder. Another transaction resulted in RQ acquiring 100 percent of Ecolite's manufacturing plant. George Rogers is the CEO, chairman of the board and majority owner of RQ. Mike Patterson is on the RQ board of directors and as the COO of RQ, is its second highest ranking officer. Together Rogers and Patterson owned about 90 percent of RQ's shares.

As part of the business relationship between Ecolite and RQ, Rogers agreed to serve on the Ecolite board of directors on the condition that Ecolite obtain directors and officers (D&O) coverage. Ecolite's insurance broker, defendant GSL, purchased a Business and Management Indemnity policy (the Policy) from ACE/Illinois Union Insurance Company (the Insurer) with a policy period from November 1, 2007 to November 2, 2008. Ecolite renewed the Policy for the policy period November 2, 2008 to November 2, 2009. The Policy provided D&O coverage.

Around August 2008, Rogers and Patterson joined the Ecolite board of directors. At that time, Smith was also a member of the Ecolite board. When the Policy expired in November 2009, GSL placed a new D&O policy for Ecolite with Scottsdale Insurance Company (Scottsdale) for the policy period November 2, 2009 to November 2, 2010 (the Scottsdale policy).

Ultimately, disputes arose between RQ and Ecolite. In July 2009, Rogers and Patterson resigned from the Ecolite board. In September 2009, Rogers sent e-mails (the September e-mails) to Ecolite in his capacity as CEO of RQ, stating that RQ was prepared to file suit against Ecolite.

3

On September 29, 2009, Smith notified GSL of RQ's claims by forwarding the September e-mails to GSL employee Janna Ranjo. Smith asked Ranjo, "Please advise us if you will be notifying our insurance carrier." Ranjo did not respond to Smith's e-mail or notify the Insurer of the claim. Ranjo believed she did not need to take any action on Smith's communication because a lawsuit had not yet been filed.

On December 4, 2009, 32 days after the Policy expired and the new Scottsdale policy took effect, RQ filed a complaint in federal court against Ecolite for claims including securities fraud and negligent misrepresentation. Two days later, Smith informed GSL of the lawsuit and asked for help notifying the D&O carrier. Smith's e-mail stated that RQ's lawsuit related to "the same issue we gave you notice of back in September."

The Policy required that Ecolite give written notice of any claim no later than 60 days after the end of the policy period. Because the Policy expired on November 2, 2009, notice of the RQ claim had to be given by January 1, 2010. However, GSL did not put the Insurer on notice of the RQ claim or lawsuit until 2011. The Insurer denied the claim because it was not properly notified of the claim and the claim was made after the Policy expired.

In the meantime, GSL instructed RPS to place Scottsdale on notice of the lawsuit. Scottsdale initially provided a defense to Ecolite and assigned a lawyer to defend them in the RQ action. Scottsdale later withdrew the defense and denied coverage in November 2010. Smith's attorney friend agreed to defend Smith personally in the RQ action, but EcoliteUSA and EcoliteINT remained without counsel as they could not afford a lawyer.

4

RQ's lawsuit proceeded to trial and a jury returned a verdict in favor of RQ and against Smith in the amount of $4.3 million on RQ's claim for negligent misrepresentation. The federal court later entered a default judgment against EcoliteUSA and EcoliteINT for $3 million on RQ's claim for rescission of one agreement, plus another $4.3 million jointly and severally with Smith on RQ's claim for negligent misrepresentation.

In September 2011, Ecolite filed this action against GSL and RPS asserting negligence and other related claims arising out of the failure of GSL and RPS to timely notify the Insurer of RQ's claims. In turn, GSL and RPS filed cross-complaints against each other. Ecolite settled their claims against RPS before trial. Ultimately, RPS dismissed its cross-complaint against GSL.

The case proceeded to trial solely against GSL on Ecolite's negligence claim with the trial court deciding certain legal issues, including the interpretation and applicability of the insured vs. insured exclusion. The court found that RQ's claims were brought at the direction of Rogers and Patterson to benefit themselves and the other owners of RQ and the facts triggering application of the insured vs. insured exclusion would have been available to the Insurer upon receipt of the claims documents.

The court observed that even if the Insurer was required to defend Ecolite until further investigation resulted in more evidence supporting the insured vs. insured exclusion, the absence of a temporary defense by the Insurer caused no harm because Scottsdale defended Ecolite. Accordingly, the court concluded that GSL was entitled to judgment in its favor as against Ecolite.

The trial court tentatively entered judgment against RPS on GSL's cross-complaint, but removed this directive from its final statement of decision. The trial court entered judgment in favor of GSL, and Ecolite timely appealed from both the statement of decision and judgment. We consolidated the appeals by order dated December 12, 2013. RPS also appeals.

DISCUSSION

I. *Ecolite's Appeal*

A. General Legal Principles and Standard of Review

An insurer has no duty to defend or indemnify when there is no possibility for coverage under the terms of the insurance policy. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 19 (*Waller*); *Golden Eagle Ins. Corp. v. Cen–Fed, Ltd.* (2007) 148 Cal.App.4th 976, 993.) Insurance policies are generally interpreted in the same manner as any other contract. (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264.) Despite broad general coverage provisions, insurers often limit coverage in exclusions. (*Westoil Terminals Co., Inc. v. Industrial Indemnity Co.* (2003) 110 Cal.App.4th 139, 149.) When an insurer has limited coverage, "the plain language of the limitation must be respected." (*Continental Cas. Co. v. Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 432.)

Policy language is ambiguous when it reasonably may be interpreted in two or more ways. (*Waller*, *supra*, 11 Cal.4th at p. 18.) The language must be interpreted in the context of the policy as a whole, in light of the circumstances of the case and cannot be deemed to be ambiguous in the abstract. (*Ibid.*) We will not strain to create an ambiguity where none exists. (*Id.* at p. 19.) Interpretation of an insurance policy presents a

6

question of law reviewed de novo. (*Id.* at p. 18.) We uphold the trial court's findings of fact if they are supported by substantial evidence. (*Wausau Underwriters Ins. Co. v. Unigard Security Ins. Co.* (1998) 68 Cal.App.4th 1030, 1038.)

B. Analysis

Ecolite argues the trial court erred by finding that the Insurer had no duty to indemnify it based on the insured vs. insured exclusion because (1) the RQ lawsuit was not filed by or "at the direction" of an insured within the meaning of the exclusion, (2) a reasonable insured in Ecolite's position would expect D&O coverage for a third-party lawsuit claiming harm from misrepresentations allegedly made by its own CEO and board director, and (3) the exclusion is ambiguous on the particular facts of this case. We begin our discussion of these contentions by examining the language of the Policy.

The Policy provided coverage for a loss arising from claims made against Ecolite for a "[w]rongful act" taking place during the policy period. The Policy defined a wrongful act as including any "error, omission, misleading statement, misstatement, neglect, [or] breach of duty" by Ecolite's directors and officers. The Policy included an insured vs. insured exclusion. With certain specified exceptions not applicable here, this provision excluded claims "brought or maintained by, on behalf of, in the right of, or *at the direction of any Insured in any capacity*, . . . and whether or not collusive . . . ." (Italics added.)

It is undisputed that from August 2008 to July 2009, Rogers and Patterson were directors of Ecolite. The Policy defined "Insureds" to mean "the Company and the Directors and Officers" and it defined "Directors and Officers" to mean "any person who

7

was, now is, or shall become" a "duly elected or appointed director, officer, or similar executive of the Company. . . ." Thus, under the plain language of the policy, Rogers and Patterson were "Insureds."

Substituting "Rogers and Patterson" in place of the words "any Insured" in the insured vs. insured exclusion results in the exclusion applying if RQ's claims were "brought or maintained by, on behalf of, in the right of, or at the direction of [Rogers and Patterson] in any capacity . . . and whether or not collusive . . . ." Accordingly, under the plain language of the policy, the insured vs. insured exclusion applied if Rogers and Patterson "direct[ed]" RQ to bring claims against Ecolite.

On this issue, the trial court examined the evidence and concluded that RQ's claims were brought at the direction of Rogers and Patterson. GSL asserts, and Ecolite does not contest, that substantial evidence supported this conclusion. We agree. Briefly, Rogers and Patterson were majority shareholders of RQ. Rogers was chairman of the board of RQ and Patterson was a director. Rogers and Patterson authored the demand letters to Ecolite threatening suit by RQ. RQ filed its action against Ecolite before RQ held a board meeting on the matter. The RQ board of directors later "'ratified'" the "'decision of the officers'" to file the action.

Ecolite attempts to avoid this result by arguing that the insured vs. insured exclusion is ambiguous as there are competing interpretations of the Policy language. First, the interpretation adopted by the trial court that the RQ lawsuit was brought "at the direction" of an insured because Rogers and Patterson were insureds under the Policy and the primary decision-makers for RQ. Ecolite claims another equally reasonable

8

interpretation of the Policy language is that the lawsuit was not brought "at the direction" of an insured because Rogers and Patterson were acting on behalf of a noninsured corporation that was governed by its board as a collective body, as distinguished from its individual directors.

We reject Ecolite's contention that its interpretation of the insured vs. insured exclusion is equally reasonable given that the Policy (1) was a business and management indemnity policy, (2) provided D&O coverage, and (3) defined "Insureds" as "the Company and the Directors and Officers."  Put another way, it appears the Insurer drafted the insured vs. insured exclusion to encompass this precise situation—an insured (Rogers and Patterson), acting in any capacity, directing the filing of an action against another insured (Ecolite) to recover business losses.

Ecolite asserts that "'[t]he insured versus insured exclusion was designed by insurance carriers to deter so-called "friendly" or "collusive" suits by which companies sought to recoup ordinary business losses by asserting claims against insured directors and officers, and recovering from the insurer after reaching a settlement.' (Annot., Construction and Application of Insured vs. Insured Exclusion of Directors and Officers Insurance Policy (2006) 14 A.L.R.6th 687.)"  While we acknowledge the history and purpose of a clause may be used as an aid to discern the meaning of disputed policy language (*MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 653), history and purpose cannot be used to defeat the plain language of a policy (see *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co.* (11th Cir. 2005) 412 F.3d 1224, 1229 [exclusion's rationale does not trump text]).  Here, the insured vs. insured exclusion excluded coverage for "any

9

Claim . . . brought or maintained . . . at the direction of any Insured in any capacity . . . *whether or not collusive*." (Italics added.) The trial court found, and Ecolite does not contest, that the insertion of the italicized phrase eliminated any inquiry into whether the underlying lawsuit was collusive.

Ecolite also contends the trial court erred by finding the Insurer had no duty to defend the RQ lawsuit. Specifically, the trial court found that when Ecolite informed GSL of the claims for tender to the necessary insurance carriers, the carriers had all of the evidence and facts needed to discover and evaluate application of the insured vs. insured exclusion. The court further found that "[e]ven assuming the application of this exclusion was not readily apparent upon the initial tender of the claim, plaintiff's defense costs for the underlying action were paid for a number [of] months by Scottsdale Insurance. As a result, plaintiff has not sustained damages and the application of this exclusion operates to bar any recovery by plaintiff in this action." Necessarily implied in these express findings is the finding that the Insurer owed no duty to defend Ecolite beyond Scottsdale's withdrawal. The evidence presented at trial supports the trial court's latter no damages finding.

The duty to defend turns on whether an insurer has extrinsic evidence, containing undisputed facts, which conclusively eliminate a potential for liability. (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 298-299.) Here, the factual question whether the RQ lawsuit was filed "at the direction" of Rogers and Patterson was not resolved until this trial concluded. Accordingly, it cannot be said that at the inception of RQ's lawsuit, the facts known to the Insurer conclusively demonstrated no potential for

10

coverage. Nonetheless, the evidence supports the trial court's finding that Ecolite suffered no damages based on a breach of the duty to defend.

On December 4, 2009, RQ filed its action against Ecolite. On June 3, 2010, counsel for Scottsdale sent a letter to Ecolite informing them that Scottsdale would be defending the RQ action under a reservation of rights. In a letter dated November 18, 2010, Scottsdale withdrew its defense on the grounds RQ's claims arose under the coverage period for the Policy and the insured vs. insured exclusion in the Scottsdale policy precluded coverage. In 2012, *after* Scottsdale withdrew its defense, a judgment was entered against Smith and a default judgment entered against EcoliteUSA and EcoliteINT in the RQ action.

These facts support the trial court's findings that during the time period the Insurer potentially wrongfully failed to defend Ecolite in the RQ action, Scottsdale defended Ecolite. Ecolite conceded at trial that they were not claiming any fees prior to the withdrawal of coverage by Scottsdale. Thus, the absence of a defense by the Insurer resulted in no damages to Ecolite based on the trial court's conclusion that the Insurer owed no duty to defend Ecolite beyond Scottsdale's withdrawal and would have ultimately properly denied coverage based on application of the insured vs. insured exclusion.

## II. *RPS's Appeal*

A. Facts

GSL and RPS filed cross-complaints against each other. RPS dismissed its cross-complaint against GSL with prejudice. GSL requested costs against RPS in the amount

11

of $18,529.44. The court later entered judgment in favor of GSL on RPS's cross-complaint and awarded GSL its requested costs in the amount of $18,529.44.

The matter proceeded to trial on GSL's cross-complaint against RPS for breach of the "LEMAC Producer Agreement" (the producer agreement), express or implied equitable contractual indemnity, equitable indemnity, contribution, declaratory relief and negligence. After the bench trial, the court issued a tentative statement of decision directing entry of judgment in favor of GSL and against RPS on GSL's cross-complaint. RPS requested the court issue a further statement of decision addressing certain controverted issues and clarifying certain factual findings. The court issued its final statement of decision that eliminated the language directing entry of judgment in favor of GSL and against RPS on GSL's cross-complaint. Nonetheless, the final statement of decision found that the producer agreement contained a mutual contractual indemnity provision that unambiguously required each party to indemnify the other for liability arising from the conduct of the indemnitor. The trial court concluded that RPS and GSL had "'contractualized'" the doctrine of equitable indemnity. RPS timely appealed.

B. Analysis

RPS asserts the trial court erred in concluding that it and GSL had contractualized the doctrine of equitable indemnity. It also claims that to the extent we affirm the ruling on the insured vs. insured exclusion, the court erred by not rendering judgment in RPS's favor on GSL's cross-complaint. Finally, RPS argues the trial court erred in awarding GSL double recovery of costs. We examine each contention in turn.

12

RPS first contends the trial court's conclusion that the producer agreement contained a mutual indemnity provision is a final judgment on GSL's declaratory relief claim.  RPS claims the trial court erroneously interpreted the indemnity provision as the provision does not evidence an intent on the part of GSL or RPS to indemnify each other for a harm one of them caused.  GSL argues that, to the extent we affirm the judgment in its favor against Ecolite, this issue is moot as there are no damages for either party to indemnify.  We agree with GSL.

"An appeal should be dismissed as moot when the occurrence of events renders it impossible for the appellate court to grant appellant any effective relief."  (*Cucamongans United for Reasonable Expansion v. City of Rancho Cucamonga* (2000) 82 Cal.App.4th 473, 479.)  The policy underlying the rule is that the Court of Appeal "decide[s] justiciable controversies and will normally not render advisory opinions." (*Ebensteiner Co., Inc. v. Chadmar Group* (2006) 143 Cal.App.4th 1174, 1179.)

This portion of RPS's appeal is in the nature of a protective cross-appeal.  Our affirmance of the GSL-Ecolite judgment eliminates any need for indemnity as between RPS and GSL.  (*GEM Developers v. Hallcraft Homes of San Diego, Inc.* (1989) 213 Cal.App.3d 419, 430 [no indemnity without joint and several liability by the prospective indemnitor and indemnitee].)  The affirmance also renders moot any need to interpret the mutual indemnity provision contained in the producer agreement.  Consequently, any opinion addressing the merits of this portion for the appeal would be purely advisory.  We dismiss this portion of the appeal as moot.

13

RPS next asserts that, to the extent we affirm the ruling on the insured vs. insured exclusion, the trial court erred by not rendering judgment in its favor on GSL's cross-complaint. GSL disagrees, claiming it prevailed as against RPS as the trial court adopted its interpretation of the indemnity provision. GSL also contends the trial court determined it was the prevailing party and that RPS forfeited any error or ambiguity regarding the resolution of the GSL cross-complaint by failing to bring the matter to the court's attention.

GSL's cross-complaint against RPS contained six causes of action. The trial court's statement of decision, however, only addressed GSL's declaratory relief cause of action, finding the contract between GSL and RPS required the parties indemnify each other on a comparative fault basis. Review of GSL's trial brief shows the court adopted GSL's interpretation of the contractual indemnity provision.

Based on this finding, it is reasonable to assume the trial court considered GSL to be the prevailing party on its cross-complaint against RPS. The trial court's tentative statement of decision ordered that judgment be entered in GSL's favor as against Ecolite and RPS and named GSL the prevailing party. The court's final statement of decision, however, inexplicably deleted this language. We note that GSL did not file its own appeal to address this issue. Although RPS responded to the court's tentative statement of decision with a request for a further statement of decision, it did not request the trial court name it the prevailing party on GSL's cross-complaint. Because RPS failed to bring the purported error to the trial court's attention, we deem it forfeited. (*Perez v. Grajales*

14

(2008) 169 Cal.App.4th 580, 591-592 [arguments raised for the first time on appeal are deemed forfeited].)

Finally, RPS argues the trial court erred in awarding GSL double recovery of costs.  We agree.

GSL does not contest that it was awarded costs against RPS for the same expenses it later sought and was awarded in connection with its defense of Ecolite's complaint.  Instead, GSL argues that RPS waived any error by failing to file a motion to tax costs and by not timely objecting to the proposed judgment.  These arguments lack merit.

GSL filed its memorandum of costs against RPS on February 26, 2013.  About three months later, it filed a memorandum of costs seeking those same expenses against Ecolite.  Thus, by the time RPS discovered this issue, the time to file a motion to tax costs had expired.  (Cal. Rules of Court, Rule 3.1700(b)(1) [motion to tax costs must be filed within 15 days of service of memorandum of costs].)  Upon discovering the issue, RPS objected to the proposed judgment against it and asked the trial court to strike the costs award from the judgment.  We reject GSL's assertion that the objection was untimely.

A party must object within 10 days after service of a proposed judgment.  (Cal. Rules of Court, Rule 3.1590(j).)  Where a document is served by mail, subdivision (a) of Code of Civil Procedures section 1013 extends by five calendar days the time for performing any act following service of a document by mail.  Here, GSL served its proposed judgment by mail on September 13, 2013 and RPS timely objected 11 days later on September 24, 2013.  RPS's objection to the proposed judgment sought to strike

15

the duplicative costs, properly placed the issue before the trial court and preserved the alleged error for our review.

Comparison of the costs memorandum filed by GSL as to RPS and Ecolite show that GSL sought and was awarded the same costs as against both RPS and Ecolite. The costs award as to Ecolite is now final. Accordingly, we agree that the duplicative costs award as to RPS is unreasonable and must be stricken. (Code Civ. Proc., § 1033.5 ["Allowable costs shall be reasonable in amount."].)

## DISPOSITION

The judgment in favor of GSL as against Ecolite is affirmed. As between Ecolite and GSL, GSL is entitled to its costs on appeal. The judgment in favor of GSL against RPS is modified to strike the cost award of $18,529.44. In all other respects, the judgment in favor of GSL against RPS is affirmed. As between RPS and GSL, the parties are to bear their own costs on appeal.

MCINTYRE, J.

WE CONCUR:

HALLER, Acting P. J.

MCDONALD, J.

16