[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-14092
Non-Argument Calendar

_____

D.C. Docket No. 2:16-cv-00015-JES-CM

GOTHAM INSURANCE COMPANY,

Plaintiff-Counter Defendant -
Appellee,

versus

WEST COAST FIRE PROTECTION CORP.,
GIOVANNI BLANCO,

Defendants - Counter Claimants-
Appellants,

MARIA FORESTE,
RAYMOND FORESTE,
each individually, and as parents and natural guardians of E.F.,

Defendants -Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(October 10, 2018)

Before WILLIAM PRYOR, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

West Coast Fire Protection Corp., Giovanni Blanco, Maria Foreste, and Raymond Foreste appeal the district court's order granting summary judgment in favor of Gotham Insurance Company regarding the scope of coverage under West Coast's umbrella insurance policy. The district court concluded that there was no coverage under the umbrella policy. After review, we agree and affirm.

## I.    FACTUAL BACKGROUND

This case arises out of an automobile accident that occurred when a vehicle Blanco was driving struck the Forestes' child, causing her serious and permanent injuries. At the time of the accident, Blanco was working for West Coast and driving a vehicle owned by the company. West Coast had an automobile insurance policy with Allstate, as well as commercial general liability and umbrella policies with Gotham.

After the accident, the Forestes sued West Coast and Blanco in state court. Allstate retained an attorney to defend West Coast and Blanco in the state court lawsuit. Gotham confirmed to Allstate that Gotham had "excess coverage of $2,000,000 for this loss" under the umbrella policy. Doc. 77-1 at 25.[1]  In a

---

[1] Citations to "Doc. #" refer to numbered entries on the district court's docket.

separate letter Gotham told the Forestes' counsel that it was West Coast's excess coverage provider.

The Forestes then made a time-limited settlement demand, seeking the combined policy limits of West Coast's automobile policy with Allstate ($1 million) and its umbrella policy with Gotham ($2 million).  A few days before the expiration of the settlement demand, Gotham informed West Coast that under the terms of the umbrella policy there was no coverage for the Forestes' claim. Gotham explained that because it had no duty to defend or indemnify West Coast, it would not contribute to any settlement with the Forestes.  Gotham also informed the Forestes' attorney that because there was no coverage, it rejected the settlement demand.

Gotham then filed this declaratory judgment action in federal district court against West Coast, Blanco, and the Forestes seeking a declaration that there was no coverage under the umbrella policy.  West Coast and Blanco filed a counterclaim seeking a declaration that Gotham had a duty to defend and indemnify them.  The parties filed cross motions for summary judgment.  The district court granted Gotham's motion, declared that there was no coverage under the umbrella policy for Blanco's auto accident, and entered judgment in favor of Gotham.  West Coast, Blanco, and the Forestes appealed.

3

## II.    THE UMBRELLA POLICY'S TERMS

Before addressing the parties' arguments, we review the relevant terms of West Coast's umbrella policy.  The record includes a certified copy of the policy,[2] which consists of a declarations page, a coverage form, and various endorsements.

The umbrella policy's declarations page identifies West Coast as the insured, lists the policy number, and indicates the policy period.  It also states that the policy has a $2 million limit of liability.  The declarations page includes a space for the identification of "Form(s) and Endorsements(s) [sic] made a part of the policy at the time of issue."  Doc. 5-2 at 4.  Only three forms or endorsements are identified in this space:  EX00271010, IL00010910, and CU00010900.  The bottom of the declarations page states in all capital letters that "THIS POLICY TOGETHER WITH THE POLICY CONDITIONS, COVERAGE PARTS AND FORMS AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY."  *Id.*

The certified copy of the policy includes a "Commercial Liability Umbrella Coverage Form," Form CU 00010900, which is one of the three items referenced on the declarations page.  This form sets forth the coverages and exclusions under the umbrella policy.  It provides that Gotham will pay on behalf of West Coast for certain losses because of bodily injury or property damage.  Nothing in the

---

[2] Both Gotham and the appellants filed certified copies of the policy with the district court.  The certified copies filed by each side are identical.

coverage form addresses how to determine when an *endorsement* is made a part of the policy, however.

Several endorsements are attached to the certified copy of the insurance policy.  One of these endorsements is the Auto Exclusion Endorsement, Form UM 00780911.  This endorsement lists West Coast as the insured, indicates the policy number for the umbrella policy, and identifies the endorsement's effective date.  The endorsement states that it "modifies" West Coast's umbrella policy by adding an exclusion.  *Id.* at 36.  The exclusion provides that "[t]his insurance does not apply[] [t]o any liability arising out of the ownership, maintenance, operation, use, loading or unloading of any 'auto.'"  *Id.*

Another endorsement attached to the policy is the "Schedule of Forms and Endorsement," Form GL 00701010.  The header to this schedule identifies West Coast as the named insured and the policy number for West Coast's umbrella policy.  The header then states the schedule's effective date.  The schedule identifies various endorsements and forms that are attached to the certified copy of the policy.  The schedule states that "[i]f this endorsement is listed in the policy declarations, it is in effect from the time coverage under this policy commences.  Otherwise, the effective date of this endorsement is as shown above at the same time or hour of the day as the policy became effective."  *Id.* at 31.  The schedule is not listed on the declarations page.  In addition, many of the endorsements and

5

forms listed on the schedule, including the Auto Exclusion Endorsement, are not identified on the policy's declarations page.

### III.    STANDARD OF REVIEW

We review *de novo* a district court's grant of summary judgment, viewing all the evidence and drawing all reasonable factual inferences, in favor of the non-moving party.  *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1321 (11th Cir. 2014).  "The interpretation of provisions in an insurance contract is a question of law, also reviewed *de novo*."  *Id.*

### IV.    DISCUSSION

The appellants argue that the district court erred in granting summary judgment to Gotham because (1) the umbrella policy can reasonably be interpreted as not incorporating the Auto Exclusion Endorsement and thus must be construed in their favor, and (2) Gotham is estopped from denying coverage because it previously told West Coast and the Forestes that there was coverage.  We address each argument in turn.

### A.    The Policy Unambiguously Bars Coverage Under the Auto Exclusion Endorsement.

The appellants first argue that the district court erred in concluding that there was no coverage under the umbrella policy.  They contend that the policy is ambiguous and reasonably can be interpreted not to include the Auto Exclusion Endorsement, which is not listed as a form or endorsement on the policy's

declarations page.  They argue that in light of this ambiguity, we must construe the policy in their favor and conclude that the Auto Exclusion Endorsement is not part of the policy.  We reject their argument because the only reasonable interpretation of the insurance policy as a whole is that the Auto Exclusion Endorsement is a part of the policy.

Under Florida law,[3] an insurer owes a duty to defend its insured against a legal action "when the complaint alleges facts that fairly and potentially bring the suit within policy coverage."  *Jones v. Fla. Ins. Guar. Ass'n*, 908 So. 2d 435, 442-43 (Fla. Dist. Ct. App. 2005).  If the allegations asserted in the complaint fall outside the policy's coverage, there is no duty to defend.  *See Chicago Title Ins. v. CV Reit, Inc.*, 588 So. 2d 1075, 1076 (Fla. Dist. Ct. App. 1991).   When there exists no duty to defend, an insurer has no duty to indemnify.  *WellCare of Fla., Inc. v. Am. Int'l Specialty Lines Ins.*, 16 So. 3d 904, 906 (Fla. Dist. Ct. App. 2009).

In interpreting West Coast's umbrella policy, we start "with the plain language of the policy as bargained for by the parties."  *Auto-Owners Ins. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000) (alteration adopted) (internal quotation marks omitted).  We must read the "policy as a whole, endeavoring to give every provision its full meaning and operative effect."  *Id.*  In interpreting the policy as a whole, we consider not only the printed policy form but also the policy's

---

[3] Because this is a diversity case, we apply the substantive law of Florida, the forum state. *See LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1515 (11th Cir. 1997).

declarations page and any endorsements to the policy. *See Swire Pac. Holdings v. Zurich Ins.*, 845 So.2d 161, 166 (Fla. 2003); *Lenhart v. Federated Nat'l Ins.*, 950 So. 2d 454, 456 (Fla. Dist. Ct. App. 2007).

If the policy language "is susceptible to more than one reasonable interpretation, one providing coverage and . . . another limiting coverage, the insurance policy is considered ambiguous." *Anderson*, 756 So. 2d at 34. We construe ambiguous provisions "in favor of the insured and strictly against the drafter." *Id.* Similarly, an exclusion to a policy that is ambiguous must be construed strictly against the insurer. *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 412 F.3d 1224, 1228 (11th Cir. 2005). But we apply this rule of construction and interpret the policy in favor of the insured and against the insurer "[o]nly when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction." *Id.* (internal quotation marks omitted).

Here, the parties agree that if the Auto Exclusion Endorsement applies, Gotham had no duty to defend or indemnify West Coast or Blanco because the allegations in the Forestes' complaint established that their claims arose out of Blanco's use of an automobile. The dispute here centers, instead, on whether the policy is ambiguous about whether the Auto Exclusion Endorsement is a part of the policy.

8

The Auto Exclusion Endorsement is clearly part of the umbrella policy because the endorsement on its face indicates that it is made a part of the policy. The endorsement, which is included in the certified copy of the policy, states that it "modifies" the insurance provided under the umbrella policy, identifies West Coast as the named insured, lists the policy number for the umbrella policy, and indicates the endorsement's effective date. Doc. 5-2 at 36. Because the parties plainly expressed in the endorsement that it modifies the policy, we must treat it as part of the policy. To interpret the policy not to include the Auto Exclusion Endorsement would render the endorsement entirely meaningless and run afoul of the Florida Supreme Court's instruction that we must "endeavor[] to give every provision its full meaning and operative effect." *Anderson*, 756 So. 2d at 34.

The appellants nonetheless argue that it is reasonable to interpret the policy as not including the Auto Exclusion Endorsement because the endorsement is not listed on the policy's declarations page. It is true that the declarations page includes a space for the identification of "Form(s) and Endorsements(s) [sic] made a part of the policy at time of issue" and that the Auto Exclusion Endorsement is not listed in this space. Doc. 5-2 at 36. But the conclusion that the appellants draw from this omission—that the Auto Exclusion Endorsement is not made a part of the policy—is unsupported. Nothing on the declarations page (or anywhere else in the

9

policy) indicates that an endorsement *must* be listed on the declarations page to modify the policy.

The policy, viewed as a whole, reflects that the parties contemplated that an endorsement could modify the policy without being listed on the declarations page. Not only does the Auto Exclusion Endorsement itself say that it is a part of the policy, but the Schedule of Forms and Endorsements, which itself is an endorsement, identifies the Auto Exclusion Endorsement and other endorsements included in the certified copy of the policy.  The schedule states that "if this endorsement is listed in the policy declarations, it is in effect from the time coverage under this policy commences.  Otherwise, the effective date of this endorsement is as shown above at the same time or hour of the day as the policy becomes effective." *Id.* at 31.  This language indicates that the parties did not intend for the declarations page to contain an exhaustive list of the endorsements to the umbrella policy.  If all endorsements were required to be listed on the declarations page, there could be no "[o]therwise."  Rather, the language concerns *when* an endorsement becomes effective, because the declarations page specifies when coverage is bound.[4]

---

[4] The appellants rely on the Florida appellate court decision in *Spaid v. Integon Indemnity Corp.*, 143 So. 3d 949 (Fla. Dist. Ct. App. 2014), to support their contention that a policy is ambiguous when the declarations page and policy language contradict each other.  But *Spaid* is inapplicable here because, as we explain above, the declarations page is not inconsistent with the terms of the endorsements attached to the policy.

After carefully considering the policy, we conclude that it is susceptible to only one reasonable interpretation:  that the Auto Exclusion Endorsement is a part of the policy.  Because the endorsement plainly bars coverage for the Forestes' state court claims, which arose out of an auto accident, the district court properly concluded that Gotham had no duty to defend or indemnify West Coast or Blanco.[5]

## B.    Gotham's Conduct Does Not Give Rise to Coverage by Estoppel.

The appellants also make the independent argument that Gotham had a duty to defend and indemnify West Coast and Blanco in the Forestes' state court action based on a theory of coverage by estoppel.  They contend that because Gotham represented to West Coast and Blanco that there was coverage, it was estopped from later denying coverage.  We disagree.  Coverage by estoppel does not apply here because there is no evidence that West Coast or Blanco experienced a detrimental change in position as a result of relying on Gotham's representation that there was coverage.

Under Florida law, the doctrine of estoppel generally "may not be used to create or extend coverage" where none originally existed.  *AIU Ins. v. Block*

---

[5] The appellants also argue that the district court erred in concluding that there was no coverage under the umbrella policy because in interpreting the policy, the court relied on extrinsic evidence of the parties' underwriting communications.  We need not address whether it was proper for the district court to consider these communications.  The policy unambiguously included the Auto Exclusion Endorsement; the parties' underwriting communications could not alter the plain language.  In addition, because we conclude that the Auto Exclusion Endorsement bars coverage, we need not address Gotham's alternative argument that the policy's separate Auto Coverage Exclusion bars coverage.

11

*Marina Inv., Inc.*, 544 So. 2d 998, 1000 (Fla. 1989).  The Florida Supreme Court

has recognized a "very narrow exception" to this rule under which "the doctrine of

promissory estoppel may be utilized to create insurance coverage where to refuse

to do so would sanction fraud or other injustice." *Id.* at 1000 n.1.  "The essential

elements of estoppel are (1) a representation as to a material fact that is contrary to

a later-asserted position, (2) reliance on that representation, and (3) a change in

position detrimental to the party claiming estoppel, caused by the representation

and reliance thereon." *Tome v. State Farm Fire & Cas. Co.*, 125 So. 3d 864, 867

(Fla. Dist. Ct. App. 2013) (internal quotation marks omitted).   Promissory estoppel

will apply only if the insured can show prejudice because "[i]t is the fact that the

insured has been prejudiced which estops the insurer from denying the indemnity

obligation of the insurance policy." *Doe ex rel. Doe v. Allstate Ins*, 653 So. 2d

371, 374 (Fla. 1995).

Here, the appellants argue that Gotham is estopped from denying coverage

because it previously represented to West Coast and Blanco that there was

coverage.  But West Coast and Blanco cannot show that they detrimentally relied

on Gotham's representation that coverage existed.  Only about a month passed

between Gotham's representation that there was coverage and its denial of

coverage. Shortly after Gotham denied coverage, West Coast wrote to Gotham

asserting that it had detrimentally relied on Gotham's representation that coverage

12

existed.  But when Gotham wrote back and asked West Coast to explain the factual basis for its claim of detrimental reliance, it never responded.[6]

The appellants nevertheless assert that they detrimentally relied on Gotham's representation because the Forestes made a time-limited settlement demand before Gotham denied coverage.  But there is no evidence that Gotham represented to West Coast or Blanco that it would attempt to settle with the Forestes or that it was negotiating a settlement on their behalf.  Indeed, Gotham denied coverage before the settlement offer expired.  Because the appellants have failed to show detrimental reliance on Gotham's representation of coverage, promissory estoppel does not apply.[7]  We thus conclude that the district court properly rejected the appellants' coverage by estoppel argument.

## V.    CONCLUSION

For the foregoing reasons, we affirm the district court's judgment.

---

[6] We note that we are not called upon to address whether detrimental reliance would exist in a situation where an insurance company represented that coverage existed and provided its insured with a defense in the underlying lawsuit but then denied coverage and withdrew the defense.  Here, West Coast and Blanco were continuously represented in the Forestes' lawsuit by counsel provided by Allstate.

[7] The appellants assert that if Gotham had never made representations that coverage existed, West Coast and Blanco would have been able to settle with the Forestes.  They contend that by representing that there was coverage and then denying coverage, Gotham's actions "result[ed] in a lawsuit" that subjected West Coast and Gotham "to entry of a potential excess judgment."  Reply Br. at 10.  We note that after Gotham denied coverage, West Coast and Blanco did settle with the Forestes.  And nothing in the record suggests that West Coast and Blanco obtained a less favorable settlement because Gotham initially represented that there was coverage and then denied coverage.  In fact, there is no indication in the record that the settlement among West Coast, Blanco, and the Foresetes exceeded the limitation of liability for West Coast's auto policy.

13

**AFFIRMED.**